UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH HASKELL MAINE,<br><br>    Petitioner,<br><br>    v.<br><br>LUIS MARTINEZ,<br><br>    Respondent. | Case No.   1:20-cv-00303-JLT-HBK (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITIONER'S SECOND AMENDED PETITION AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY [1]<br><br>FOURTEEN-DAY OBJECTION PERIOD |

Petitioner Joseph Haskell Maine, a state prisoner, is proceeding pro se on his Second Amended Petition for Writ of Habeas Corpus filed under 28 U.S.C. § 2254 on November 4, 2022. (Doc. No. 25, "Petition"). The Petition raises the following ground for relief:

> Juror No. 3669228 admitted to a bias opinion against the defendant and is a family member of the victim family.

(*Id*. at 4, unedited text).   Respondent lodged the state court record (Doc. No. 27, 27-2, 27-2) and filed an Answer on February 24, 2023.  (Doc. No. 28).  Petitioner elected not to file a reply to the Answer.  (See Doc. No. 16 at 3, ¶ 4, affording a petitioner 30 days to file a reply to an answer). This matter is deemed submitted on the record before the Court.  After careful review of the record and appliable law, the undersigned recommends the district court deny Petitioner relief on

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

the sole ground raised in his Petition and decline to issue a certificate of appealability.

**BACKGROUND**

Following a jury trial in Kern County Superior Court, Petitioner was found guilty of Count I of the Information, a violation of Penal Code section 187, second degree murder, in the death of Vanessa Carrillo; Count II, violation of Penal Code 187, second-degree murder, in the death of Ms. Carrillo's unborn child; Count III, violations of Penal Code 191.5, gross vehicular manslaughter while intoxicated, in the death of Vanessa Carrillo, and multiple victim enhancements (Veh. Code § 23558) as to Pamela Coleman and Martha Carrillo. Petitioner was sentenced to concurrent 15-year-to-life sentences on Counts I and II. His 12-year aggregate sentence on Count III was stayed. On April 25, 2018, Petitioner's conviction was affirmed in full on appeal. *People v. Maine*, 2018 Cal.App. Unpub. LEXIS 2853. On February 19, 2019, Petitioner filed a petition to vacate his second-degree murder convictions and resentence him pursuant to Penal Code section 1170.95.[2] (Doc. No. 27-2 at 23-25).[3] Appointed counsel filed a *Wende*[4] brief. (Doc. No. 27-2 at 4-18). The Fifth Appellate District Court of Appeal affirmed judgment. (Doc. No. 27-2 at 19-22).

Pertinent in terms of exhaustion to his sole claim raised in his Petition, Petitioner filed the following state habeas corpus petitions. Petitioner first filed a pro se state habeas corpus on April 2, 2019 (HC16165A) asserting the following grounds for relief: Sixth Amendment violation alleging actual juror bias (Juror Mr. 3669228), Sixth Amendment violation alleging actual juror bias (Juror Ms. 3615535); and ineffective assistance of appellate counsel for failing to raise the two claims of juror bias on appeal. (Doc. No. 27-2 at 28-71). On August 9, 2019, the Superior Court denied Petitioner's state petition for writ of habeas corpus. (Doc. No. 27-2 at 72-74). In its opinion dated August 9, 2019, after noting it reviewed the pertinent part of the trial transcripts

---

[2] Section 1170.95 was added by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 4) and went into effect on January 1, 2019. This provision allows "[a] person convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts .…" (§ 1170.95, subd. (a); accord, People v. Martinez (2019) 31 Cal.App.5th 719, 723.)

[3] The Court cites to page number of the state court record as reflected on CMECF.

[4] *People v. Wende* (1979) 25 Cal.3d 436.

2

that contained the colloquy with the two challenged jurors, the Superior Court found:

> There is nothing in the record to indicate that either juror was biased against Petitioner or had any interest in assuring a guilty verdict.
>
> Trial counsel would have no grounds to request the trial court dismiss either juror for bias. Pursuant to Penal Code § 1089 and *People v. Armstrong* (2016) 1 Cal.5th 432, 450, "A trial court may discharge a juror at any time during trial if the court finds that the juror is 'unable to perform his or her duty."
>
> Under *Armstrong*, the standard of review for discharge of a juror requires that the inability to perform his or her duty must appear in the record as a demonstable reality. (*Armstrong*, *supra*, 1 Cal. 432, 450-451). Nothing in the record provided by Petitioner rises to that level. Neither juror demonstrated any such bias. Given the fact that there was no legal basis for excusing [e]ither juror, appellate counsel was clearly not ineffective for failing to raise the trial court's failure to do so as an issue on appeal.

(Doc. No. 27-2 at 73-74).

Thereafter, Petitioner filed a second state habeas corpus petition on October 24, 2019 (HC16376A) and again advanced a juror bias as to Juror No. Mr. 3669228 claiming the juror was a member of the family of the victim.[5] (Doc. No. 27-2 at 75-90). This time, Petitioner raised his juror bias claim in terms of "implied bias." (*Id*. at 77, 89). On December 13, 2019, the Superior Court in denying relief, in relevant part, found:

> **Implied Bias by a Juror**
>
> In a Writ (#HC16165A) filed on April 2, 2019, ("Prior Writ") the Petitioner contended that his appellate counsel was ineffective in not raising the issue that jurors should have been disqualified because of bias caused by ties to the case. He offered that one juror was a member of the family of the victim ("Questioned Juror").
>
> Per the transcript review conducted in the order denying the Prior Writ, the Questioned Juror was questioned by the Court regarding his connections and possible bias. Neither Defense counsel nor the prosecutor asked the Questioned Juror any questions. The Questioned Juror was not discharged from the jury, and he voted to convict Petitioner.
>
> Under *People v. Armstrong* (2016) 1 Cal.5th 432, 450-451, the standard of review for discharge of a juror for actual bias requires

---

[5] Not pertinent here, Petitioner also challenged a "995 Motion "by the prosecutor in his state petition.

that the inability to perform his or her duty must appear in the record as a demonstrable reality. Nothing in the record provided by Petitioner rises to that level. The Questioned Juror did not demonstrate any such bias. Nor did he indicate any interest in assuring a guilty verdict. Therefore, as discussed in the order regarding the Prior Writ, dismissal of the Questioned Juror was not appropriate on the basis of "actual bias". The trial court had concluded that the juror was not actually biased and, in the Prior Writ, this Court found the trial court's conclusion was appropriate and sufficient grounds did not exist for the issuance of the Prior Writ.

However, Petitioner is now arguing that the Questioned Juror, whose wife's cousin appeared to be a part of the victim's family, should have been excused under an "implied bias" theory.

Pursuant to the transcript attached to the Writ, it appeared that the Questioned Juror discovered sometime into the trial that he recognized his wife's cousin sitting in the gallery. He did not have any idea what her relationship was to anyone on the case.

"Implied bias" of a prospective juror is bias conclusively presumed as a matter of law. Put another way, this is bias attributable in law to the prospective juror regardless of actual partiality; this doctrine is rooted in the recognition that certain narrowly-drawn classes of jurors are highly unlikely, on average, to be able to render impartial jury service despite their assurances to the contrary. *Smith v. Phillips* (1982) 455 U.S. 209.

When one of the statutorily enumerated factors for implied bias is found to exist, no proof of prejudice is required-it is inferred as a matter of law. *People v. Wheeler* (1978) 22 C.3d 258, 274.

In the case of *People v. Ledesma*, (2006) 39 Cal. 4th 641, the California Supreme Court held that under California law, a juror may be excused for "implied bias" only for one of the reasons listed in Code of Civil Procedure section 229, "and for no other."

Code of Civil Procedure Section 229 provides: "A challenge for implied bias may be taken for one or more of the following causes, and for no other: (a) Consanguinity or affinity within the fourth degree to any party, to an officer of a corporation which is a party, or to any alleged witness or victim in the case at bar .... "

In this case the Questioned Juror's wife is related within a fourth degree to her cousin. By consanguinity, a first cousin is within the fourth degree of relation. A husband is treated as if he has the same relationship with his wife's relatives under affinity.

"Affinity has been defined as the 'connection existing, in consequence of marriage, between each of the married persons and the kindred of the other.' " (*Kest v. Lewis* (1959) 169 Ohio St. 317, 159 N.E.2d 449, 450.) "Degrees of relationship by affinity are computed as are degrees of relationship by consanguinity. The doctrine of affinity grew out of the canonical maxim that marriage

4

> makes the husband and wife one. The husband has the same relation, by affinity, to his wife's blood relatives as she has to them by consanguinity, and vice versa." (*State v. Hooper* (1934) 140 Kan. 481, 37 P.2d 52, 64.)
>
> The Questioned Juror's wife's cousin is not a party to the matter, a witness or a victim in this case. Petitioner presumes her to be, at best, somehow related to the victim. There is no factual basis to determine if the relationship to the victim was a family one, or even necessarily with the victim at all. Such a relation is not consanguinity or affinity within the fourth degree to any party, or any witness or victim. The Questioned Juror's relationship does not fit into any of the listed relations in Code of Civil Procedure Section 229 which would disqualify him to serve on a jury in the Petitioner's trial. None of the statutory grounds for a finding of "implied bias" by the Questioned Juror was present in the case.

(Doc. No. 27-2 at 92-94).

On June 26, 2020, Petitioner refiled[6] a petition for writ of habeas corpus in the Fifth Appellate District Court of Appeal (F081325) challenging the August 9, 2019 and December 13, 2019 denials by the Superior Court of his juror bias claims.[7] (Doc. No. 27-2 at 129-144). On December 10, 2020, the appellate court summarily denied the petition. (Doc. No. 27-2 at 145).

On February 17, 2022, Petitioner filed a state habeas petition with the California Supreme Court (S273208) raising his "implied bias/bias juror" claim asserting that "a juror that is a family member never got excused" among other grounds. (Doc. No. 27-2 at 175-180). The California summarily denied relief without comment. (Doc. No. 27-2 at 181).

## II.  APPLICABLE LAW

### A.  AEDPA General Principles

A federal court's statutory authority to issue habeas corpus relief for persons in state custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

---

[6] The court of appeal denied Petitioner's petition for writ of habeas corpus filed on May 5, 2020, because he failed to provide a copy of the superior court's orders. (Doc. No. 27-2 at 128).

[7] Relevant only for purposes of tolling, Petitioner filed another petition for writ of habeas corpus raising nine grounds, including a ground that "a juror was wring fully allowed to remain on the jury" on May 19, 2021 (F083368). (Doc. No. 27-2 at 95). In its Order dated July 8, 2021, in denying his other eight grounds, the Superior Court refused to address the juror bias ground finding "Petitioner's attempt to re-litigate the same claims constitutes an abuse of the writ. (*In re Clark* (1993) 5 Cal.4th 750.)" (Doc. No. 72-2 at 102). On January 13, 2022, the appellate court summarily denied Petitioners petition for writ of habeas corpus challenging the Superior Court's July 8, 2021 order of denial. (Doc. No. 27-2 at 174).

5

Penalty Act of 1996 (AEDPA).  AEDPA requires a state prisoner seeking federal habeas relief to first "exhaus[t] the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  If the state courts do not adjudicate the prisoner's federal claim "on the merits," a *de novo* standard of review applies in the federal habeas proceeding; if the state courts do adjudicate the claim on the merits, then the AEDPA mandates a deferential, rather than *de novo*, review.  *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016).  This deferential standard, set forth in § 2254(d), permits relief on a claim adjudicated on the merits, but only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and intentionally difficult to satisfy.  *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018); *White v. Woodall*, 572 U.S. 415, 419 (2014).

"Clearly established federal law" consists of the governing legal principles in the decisions of the United States Supreme Court when the state court issued its decision.  *White*, 572 U.S. at 419.  Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law.  28 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Williams v. Taylor*, 529 U.S. 362, 407, (2000).  "A state court's determination that a claim lacks merit precludes federal habeas

6

relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The petitioner must show that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id*. at 103.

When reviewing a claim under § 2254(d), any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 571 U.S. 12, 18 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). As the Supreme Court recently explained, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht's* actual-prejudice requirement. *Brown v. Davenport*, ⎯⎯ U.S. ⎯⎯, 142 S. Ct. 1510, 1524, 212 L.Ed.2d 463 (2022). In other words, a habeas petitioner must satisfy *Brecht*, even if AEDPA applies. *See id*. at 1526 ("[O]ur equitable precedents remain applicable 'whether or not' AEDPA applies.") (*citing* Fry v. Pliler, 551 U.S. 112, 121, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007)). In short, a "federal court must deny relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to grant relief, a court must find that the petition has cleared both tests." *Id*. at 1524.

As discussed *supra*, for the deferential § 2254(d) standard to apply there must have been an "adjudication on the merits" in state court. An adjudication on the merits does not require that there be an opinion from the state court explaining the state court's reasoning. *Richter*, 562 U.S. at 98. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99. "The presumption may be overcome when there is reason to think some other explanation for the state court's

7

decision is more likely." *Id*. at 99-100. This presumption applies whether the state court fails to discuss all the claims or discusses some claims but not others. *Johnson v. Williams*, 568 U.S. 289, 293, 298-301 (2013).

While such a decision is an "adjudication on the merits," the federal habeas court must still determine the state court's reasons for its decision to apply the deferential standard. When the relevant state-court decision on the merits is not accompanied by its reasons,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The federal court "looks through" the silent state court decision "for a specific and narrow purpose—to identify the grounds for the higher court's decision, as AEDPA directs us to do." *Id*. at 1196.

### III. ANALYSIS

In support of his claim of juror bias, Petitioner states that "Juror No. 3669228 admitted that he is a family member to the victim's family and stated, 'If we find this man not guilty, that there might be some problems at some family gathering and that's about all I can think of on the break'." (Doc. No. 25 at 4). Petitioner does not point to any specific Supreme Court case which the state court misapplied in his case. In argument, Petitioner conflates the application of the Eighth Amendment's deliberate indifference analysis and prohibition against cruel and unusual punishment to his habeas claim. (*Id*. at 6, 9-10). Respondent argues that under controlling Supreme Court caselaw, Petitioner cannot show error by the Superior Court. (Doc. No. 28 at 30-32).

**Applicable Federal Law**

The Sixth Amendment guarantees a criminal defendant a fair trial. "One touchstone of a fair trial is an impartial trier of fact-'a jury capable and willing to decide the case solely on the

8

evidence before it.'" *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Allegations of juror bias implicate a defendant's due process rights under the Fourteenth Amendment to a fair trial.

Due process, however, "does not require a new trial every time a juror has been placed in a potentially compromising situation ... [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith*, 455 U.S. at 217. Instead, due process means "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id*. Thus, a hearing to ascertain the impartiality of the challenged juror satisfies due process. *Id*.; *Remmer v. United States*, 347 U.S. 227, 229-30 (1954).

Juror bias is a question of fact, which turns on what the juror said of did, and whether the juror's statement that they could be impartial was credible. *Patton v. Yount*, 467 U.S. 1025, 1036 (1984). The Ninth Circuit has defined it as "'bias in fact'-the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000) (quoting *United States v. Torres*, 128 F.3d 38, 43 (2d Cir.1997) (internal quotation marks omitted)).

Although the Ninth Circuit recognizes that the Supreme Court has not expressly recognized or rejected an implied bias claim without a finding of juror dishonestly,[8] it has recognized such claims and defines "implied bias" as a mixed question of fact and law which occurs only in "those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances," or "where repeated lies in *voir dire* imply that the juror concealed material facts in order to secure a spot on the particular jury." *United States v. Gonzalez*, 214 F. 3d at 768-70 (internal citations omitted).

---

[8] The Supreme Court did reject a claim of implied bias as "impermissible" in *Dennis v. United States*, 339 U.S. 162, 171-72 (1950). However, Justice O'Connor in her concurrence in *Smith* noted the opinion "does not foreclose the use of 'implied bias' in appropriate circumstances, such as where the juror is an actual employee of the prosecuting agency, the juror is close relative of one the trial participants or the criminal transaction, the juror was a witness or somehow involved in the criminal transaction. *Smith*, 455 U.S. 209, 221-222.

**Petitioner is Not Entitled to Relief**

Both the California court of appeal and supreme court summarily rejected Petitioner's claims. The Court thus looks through to the last reasoned decision—the Superior Court's August 9, 2019 and December 13, 2019 decisions. *Wilson v. Sellers*, 138 S. Ct. at 1192. Considering the record, a fair-minded jurist could agree with the Superior Court's decisions that Petitioner failed to establish that Juror No. 3669228 was either actually or impliedly biased. Pertinent here is the trial court's questioning of the challenged juror that occurred after the jury was seated and trial commenced.

> THE COURT: All right. Then, we're going to take our afternoon recess at this time. Mr. 3669228, I'm going to have you stay here for a second and everybody else, we will see you at 1:30.
>
> (Whereupon, the jurors exited the courtroom.)
>
> THE COURT: With that, we're going to go ahead and clear the courtroom. All right. Everybody please be seated and we're outside the presence of all the jurors with the exception of Mr. 3669228.
>
> THE JUROR: Yes, sir.
>
> THE COURT: Am I saying that correctly?
>
> THE JUROR: Yes, sir.
>
> THE COURT: And the reason you're here Mr. 3669228 -- and I think I indicated and we talked about this during jury selection, but not in this specific situation. But the idea that sometimes you get selected, and then perhaps you realize you might know somebody a witness or somebody perhaps involved with the case or something to that affect, and that's what happened if your case; is that correct?
>
> THE JUROR: Yes, sir.
>
> THE COURT: And we have a large group of people obviously in the audience out there, and I would assume you've come to believe there are probably – they are obviously interested in the case. And I assume you believe they are connected in some fashion to Vanessa or that side of the family, and I assume you've made that deduction?
>
> THE JUROR: Yes, sir.
>
> THE COURT: And amongst that group, you recognized somebody, who was it that you recognized?
>
> THE JUROR: My wife's first cousin.

10

1  THE COURT: And what's her name?

2  THE JUROR: I can't recall right now.

3  THE COURT: No, that's all right. But at some point, I assume you saw her out in the hallway, is that what happened?

4

5  THE JUROR: Actually, as they walked in, I recognized her, and I believe her name is Mandy.

6  THE COURT: And then you recognized who she is, and you said, that's my wife's cousin, and then you let the bailiff know?

7

8  THE JUROR: Yes.

9  THE COURT: And she's had no discussions with you outside in the hallway?

10 THE JUROR: No, not at all.

11 THE COURT: Now, so you do recognize your wife's cousin? Do you know of any -- as you sit there now, are you aware of any connection between the lady in the audience and -- well, obviously, to this case is what I'm saying?

12

13

14 THE JUROR: No, I had no idea she had any connection to the case at all.

15 THE COURT: Have you ever talked to your wife about this case?

16 THE JUROR: No.

17 THE COURT: Now, obviously -- now, you have reason to believe she in some fashion is connected to the alleged victim's family in this case, do you understand that?

18

19 THE JUROR: Yes.

20 THE COURT: And you don't know what that connection is?

21 THE JUROR: No, I don't.

22 THE COURT: And you're not going to try to find out?

23 THE JUROR: No, I'm not.

24 THE COURT: Does that present an issue for you in terms of being a fair juror in this case?

25

26 THE JUROR: You know what, I was thinking about it in the break, and if there would be some kind of problem, I don't believe it would be a problem. However, I don't know if she's the first thing well, one of the things I thought about -- you know, if we find the defendant not guilty, I don't know that she might take it personally or something. You know, it might cause some kind of awkward

27

28

11

1    situation at some kind of family gathering or something, but that's the only thing I think.

2    THE COURT: Anything is possible obviously, and depending on what the verdict is, you can have reaction from any people that have an interest in the case, whether it's family or not family or whatever, that's their reaction, okay? The bottom line, however, is you recognize -- depending on how the case goes, there might be some adverse reaction that you might have to deal with on some level in the future, that's what you're telling me?

3

4

5

6    THE JUROR: Yes.

7    THE COURT: The question is, would you be concerned about that in terms of deciding -- doing your job in this case and deciding what the facts are and applying the law and decide whether or not the People have proven charges, would you let your concern about a possible adverse reaction impact your decision making in this case?

8

9

10

11   THE JUROR: No. You know, it's my – I realize how important this decision is, and it affects people's lives regardless of consequences we come to in the future. You know, I would have to disregard that.

12

13   THE COURT: And that's the issue. We can't control if anybody has a reaction. The concern is, are you going to be influenced about a concern about a reaction?

14

15   THE JUROR: I believe I can do it.

16   THE COURT: And it won't impact your decision making?

17   THE JUROR: I don't.

18   THE COURT: If you change your mind, you would let us know; is that correct?

19

20   THE JUROR: Yes, I would.

21   THE COURT: And I'm going to let the attorneys ask some questions. Mr. Moran, do you have some questions.

22   BY MR. MORAN:

23   Q. Mr. 3669228, how often do you interact with this woman, your wife's cousin?

24

25   A. Mainly at weddings and funerals, and she's my wife's family, and whenever there's some kind of event like that, you know, it's not uncommon for both her and I to be in the same event.

26

27   Q. Okay. So not very frequently?

28   A. Not very frequently.

1  Q. So not very frequently, and you don't have a close relationship with her?

2  A. No, I do not.

3  Q. Does your wife have a close relationship with her?

4  A. No. I mean, they are Facebook friends and they see each other's postings on Facebook, and they obviously talk and hug at events that we attend. They don't talk on a regular basis or anything like that.

5

6

7  Q. And will you be able to not discuss anything related to the case with her if you see her in court or anywhere else?

8  A. Yes, I will not discuss it with her.

9  Q. As you sit here right now, you don't believe that your ability to be fair will be compromised by your concern if you return a not guilty verdict, it may upset her?

10

11  A. I'm sorry. Say that again.

12  Q. Yeah, it was a long question. You're not concerned right now that, I guess, because you may be biased against my client in the sense that you would not want to return a not guilty verdict, because it may upset her?

13

14

15  A. Correct. I don't think that I -- I think I understand the question correctly, but I don't feel that my concern for any kind of future awkwardness would affect my decision.

16

17  MR. MORAN: Okay. Thank you.

18  THE COURT: Ms. Lewis?

19  BY MS. LEWIS:

20  Q. Is there anything about the nature about your relationship with her that biases towards her or that would affect whether or not I prove my case, you would vote guilty, does that make sense?

21

22  A. Yeah, there's no relationship with her that would affect my decision.

23  MS. LEWIS: Okay. Thank you, sir.

24  THE COURT: All right. And you realize you can't go home and talk this over with your wife, you understand that?

25

26  THE JUROR: Yes, I understand that.

27  THE COURT: And she's going to be in the dark about this entire thing until you're relieved of all your obligations as a juror, and at that time, you're free to talk to your wife or anybody else?

28

13

1   THE JUROR: I understand.

2   THE COURT: And certainly give it some thought, and if you have concerns, you let us know, all right, and we will talk to you.

3

4   THE JUROR: Yes, sir.

5   THE COURT: Thank you very much, sir. And you're free to go to lunch, and we will see you at 1:30. With regards to this situation involving Mr. 3669228, any comments at this point in time, Mr. Moran?

6

7   MR. MORAN: No, Your Honor.

8   THE COURT: Ms. Lewis?

9   MS. LEWIS: No thank you, Your Honor.

10  (Doc. No. 27-1 at 243-249).

11  Here, consistent with *Remmer*, the trial court promptly convened a hearing after Juror No. 3669228 made known to the trial court that he saw someone familiar in the audience. As found by the Superior Court in its August 9, 2019 Order, the record reflects as a matter of fact that Juror No. 3669228 did not make a clear declaration that he could not be impartial. To the contrary, he stated that his feeling of an future awkward situation at a family event would not affect his decision. After the trial court questioned the challenged juror, defense counsel had the opportunity to ask the juror follow-up questions. The question of juror bias, like credibility, is "largely one of demeanor." *Patton v. Yount*, 467 U.S.1025, 1038 (1984). "Demeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a potential juror is saying." *Id*. at 1038 n.14. Here, neither the trial court nor defense counsel viewed Juror No. 3669228 as biased against Petitioner or favorable to the prosecution. Nor does Petitioner submit any evidence or even argument that casts doubt on trial court's apparent credibility determination. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (finding credibility determination of a witness who was seen and observed by a trial court is not susceptible to a contrary conclusion by federal habeas court). Furthermore, jurors swear an oath under penalty of perjury affirming their ability to judge the case fairly and impartially. *See United States v. Powell*, 469 U.S. 57, 66, 105 (1984) ("Jurors, of course, take an oath to follow the law as charged, and they are expected to follow it.") (*citing Adams v. Texas*,

448 U.S. 38 (1980)).

The Superior Court in its December 13, 2019 decision found that none of the "extreme situations" recognized by Justice O'Connor in her concurrence in *Smith* were present, nor were any of the circumstances under California law present to find the juror had any improper relationship to disqualify him as a juror. There is absolutely no evidence in the record that the challenged juror was a family member to the victim in this case to support Petitioner's implied bias claim. The record reflects only that a cousin of the challenged juror's wife appeared in the audience, but the record nowhere reflects any relation between the cousin and any victim in the case. Notably here, the juror did not conceal the fact that he recognized his wife's cousin. *Compare Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) (en banc) (finding implied bias where juror "chose to conceal" facts of similar crime involving the killing of her brother).

Here, the Superior Court reasonably concluded that Juror No. 3669228 showed no actual or implied bias that resulted in a Petitioner being denied due process during his trial. The undersigned finds the state court's rejection of Petitioner's juror bias claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. Accordingly, the undersigned recommends that sole ground in the Petition be denied as without merit.

## IV. CERTIFICATE OF APPEALABIILTY

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing § 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v.*

1  *McDaniel*, 529 U.S. 473, 484 (2000).  Because the petitioner has not made a substantial showing of the denial of a constitutional right, the undersigned recommends that the court decline to issue a certificate of appealability.

Accordingly, it is **RECOMMENDED**:

Petitioner's Second Amended Petition for Wirt of Habeas Corpus (Doc. No. 25) be denied as without merit and Petitioner be denied a certificate of appealability.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   March 4, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE